538 A.2d 915

Harry O'BOYLE and Joyce O'Boyle, Appellants,

v.

J.C.A. CORPORATION, Anastasi Brick Corporation, Bernard Schwartz & Associates, Amquip Corporation, J. Hagerty, a/k/a James Hagerty, Winslow Mechanical Contractors, Inc. and P. D'Andrea, Inc., and Leonard J. Rusciani Associations, Leonard J. Rusciani, P.E., and L.F. Driscoll Company.

Harry O'BOYLE and Joyce O'Boyle, Appellants,

v.

L.F. DRISCOLL COMPANY, Anastasi Brothers Corporation, Malcolm E. Eisenberg, Individually and T/A River's Edge Limited Partnership, Alesker and Reiff, Architects, P.C., Irving Shapiro, William A. Alesker and Donald A. Reiff, Appellees.

Superior Court of Pennsylvania.

Argued Dec. 8, 1987.

Filed March 10, 1988.

David S. Shrager, Philadelphia, for appellants.

Charles W. Craven, Philadelphia, for L.F. Driscoll, appellee.

Before WIEAND, KELLY and HESTER, JJ.

WIEAND, Judge:

Harry O'Boyle was employed as foreman by Robert G. Hoffer Company, the structural concrete subcontractor on the River's Edge project in Philadelphia. He was injured when a masonry wall, which had been built by another subcontractor, collapsed and caused him to fall. O'Boyle filed common-law tort actions against various parties involved in the project, and these actions were consolidated for trial. Prior to trial, however, one of the defendants, L.F. Driscoll Company (Driscoll), moved for the entry of summary judgment on grounds that it was a statutory employer and, therefore, immune from common-law tort

liability by virtue of Section 203 of the Workmen's Compensation Law of June 2, 1915, as amended, 77 P.S. § 52.[1] The trial court agreed and dismissed Driscoll from the action. O'Boyle appealed.

On review of an order granting summary judgment, an appellate court needs to determine only whether there is a genuine issue of triable fact. *Bowman v. Sears, Roebuck and Co.*, 245 Pa.Super. 530, 369 A.2d 754 (1976). The granting of the summary judgment can be sustained only if the pleadings, depositions, answers to interrogatories and admissions plus any affidavits show that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law. *Jeffries v. McCague*, 242 Pa.Super. 76, 363 A.2d 1167 (1976).

*Doverspike v. Chambers*, 357 Pa.Super. 539, 542–543, 516 A.2d 392, 394 (1986).

A statutory employer's immunity from tort liability was explained by this Court in *Cranshaw Construction, Inc. v. Ghrist*, 290 Pa.Super. 286, 434 A.2d 756 (1981), as follows:

'[I]n negligence cases, the general contractor has the full immunity from suit by the employee of a subcontractor which an immediate employer would have. He is the statutory employer and is the injured employe's employer for negligence immunity purposes and is secondarily liable for compensation even though the immediate employer or some other intermediate subcontractor ... is insured and responds fully on the injured employe's claim. The reason for this difference cannot be found in the language of the statute, but the rationale must be that, since the general contractor remains statutorily liable, although only in a reserve status, in return for this he has the statutory employer's immunity from statutory employe negligence suits in all events.'

*Id.*, 290 Pa.Superior Ct. at 291, 434 A.2d at 758, quoting Barbieri, Pennsylvania Workmen's Compensation & Occupational Disease, Vol. 1, § 4.09(3) (1975).

---

**1.** O'Boyle has been receiving workmen's compensation benefits from the carrier for Robert G. Hoffer Company.

Section 203 of the Workmen's Compensation Act sets forth the requirements for statutory employer status as follows:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

Act of June 2, 1915, P.L. 736, art. II, § 203, as amended by the Act of June 21, 1939, P.L. 520, § 1 et seq., 77 P.S. § 52. The Supreme Court has construed this section as imposing five elements which must be established before statutory employer immunity exists. These elements are as follows:

> (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald v. Levinson Steel Co.*, 302 Pa. 287, 295, 153 A. 424, 426 (1930). See also: *Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962 (1987); *Zizza v. Dresher Mechanical Contractors, Inc.*, 358 Pa.Super. 600, 518 A.2d 302 (1986); *Bartley v. Concrete Masonry Corp.*, 322 Pa.Super. 207, 469 A.2d 256 (1983); *Cranshaw Construction, Inc. v. Ghrist, supra; Pape v. Smith*, 227 Pa.Super. 80, 323 A.2d 856 (1974).

■ In the instant case, the only element in dispute is whether the structural concrete work was a part of Driscoll's regular business which it entrusted to Hoffer, the subcontractor who was O'Boyle's employer. This element, as a general rule, is satisfied "wherever the subcontracted work [is] an obligation assumed by a principal contractor under his contract with the owner." *Jamison v. Westinghouse Electric Corp.*, 375 F.2d 465, 468 (3d Cir.1967);

*Werner v. Big Sky Shop*, 630 F.Supp. 444, 447 (E.D.Pa. 1985). See also: *Qualp v. James Stewart Co.*, 266 Pa. 502, 109 A. 780 (1920); *Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 231 A.2d 894 (1967). Thus, Driscoll was a statutory employer if it had contracted with the owner to do work which included the structural concrete work and thereafter subcontracted that work to the subcontractor who was O'Boyle's employer.

O'Boyle argues that by the terms of the contract between the owner and Driscoll, the latter was not denominated a general contractor but merely a construction manager. However, the Supreme Court, in *Capozzoli v. Stone & Webster Engineering Corp.*, 352 Pa. 183, 42 A.2d 524 (1945), declared that the nomenclature used by the parties is not controlling. Instead, to determine whether a statutory employer relationship existed, it is necessary to examine and construe the agreement between the parties. *Id.*, 352 Pa. at 186–187, 42 A.2d at 525. In the instant case, therefore, it is essential that we examine the written contract between Driscoll and the owner to determine whether it obligated Driscoll to construct the project.[2]

█ An examination of the contract between the owner and Driscoll makes it clear that Driscoll's obligation was to complete construction of the entire project. The work which is the subject of the contract is defined as "the completed construction performed by the Construction Manager with his own forces or required by a Trade Contractor's contract and includes all labor necessary to produce such construction required of the Construction Manager or a Trade Contractor, and all the materials and equipment incorporated or to be incorporated in such construction." General Conditions for Owner–Construction Manager

---

2. The task of interpreting a contract is generally a question of law to be decided by a court rather than a jury. See: *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304, 469 A.2d 563, 566 (1983); *Kardibin v. Associated Hardware*, 284 Pa.Super. 586, 595, 426 A.2d 649, 654 (1981); *National Products Co., Inc. v. Atlas Financial Corp.*, 238 Pa.Super. 152, 158, 364 A.2d 730, 733 (1976). The parties in the instant case are agreed that it was the trial court's function to determine the legal effect of the contract.

Agreement, Article 1, Section 1.1.3. The trial court observed further as follows:

> The contract between Driscoll and River's Edge is essentially a form document entitled "Standard Form of Agreement Between Owner and Construction Manager" drafted by The Associated General Contractors of America. Article 1 of the contract between River's Edge and Driscoll defines the "Construction Team" as consisting of "the Construction Manager, the Owner and the Architect/Engineer." It goes on to say that "the Construction Manager shall provide leadership to the Construction Team on all matters relating to construction." Later in Article 2, Section 2.1.7 (Construction Manager Services), the contract details that in relation to project control the construction manager is to monitor the work of the trade contractors (subcontractors) and coordinate the construction team to complete the project in accordance with the owner's objectives of cost, time and quality.

> . . . .

> [I]n Article 4, Section 4.1 of the contract . . . the language indicates that the parties contemplated Driscoll's use of its own work force in whole or in part. Section 4.1 provides that "all portions of the work that the Construction Manager does not perform with his own forces shall be performed under Trade Contracts."

> Additionally, the Amendments to the Contract dated August 14, 1980, fix a Guaranteed Maximum Price for the Project. A bonus is offered to the Construction Manager, Driscoll, if the cost of construction is less than estimated. In providing this incentive, the developer anticipates Driscoll was responsible for completing the project.

Moreover, Article 6, Section 6.2 of the contract provides that the trade contracts are to be entered directly with the construction manager, or, if not entered directly with the construction manager, they shall contain provisions neces-

sary to allow the construction manager to control the performance of the work.

From an independent review of the contract, we are led inevitably to the conclusion that Driscoll assumed responsibility for construction of the River's Edge project. Additional support for this conclusion appears in deposition testimony given by Thomas J. Tobin, Driscoll's president, and James J. Donnelly, Driscoll's senior vice president. Both Tobin and Donnelly testified that Driscoll had been hired to build the River's Edge project and was responsible for its construction. They also testified that Driscoll had entered into contracts with the various subcontractors who had performed the actual construction, and that in essence there was no difference between a construction manager and a general contractor. Finally, in the subcontract between Driscoll and Hoffer, Driscoll was referred to as the contractor and Hoffer as the subcontractor. Hoffer agreed to "faithfully comply with [the] Principal Contract insofar as the same relates to the Subcontract work and hereby does assume in regard thereto all the obligations and responsibilities, which the Contractor, by the Principal Contract, has undertaken toward the Owner."

After having carefully reviewed the pleadings, documentary evidence, and deposition testimony in the instant case, we conclude that there is no genuine issue of material fact as to Driscoll's status. Driscoll was a statutory employer. Therefore, it was entitled to judgment as a matter of law.

O'Boyle argues in his brief that extending statutory employer status to Driscoll will defeat the real purpose of the rule, which is to protect the injured worker's remedy under the Workmen's Compensation Act. Inasmuch as appellant's employer (Hoffer) had the necessary compensation coverage and in fact its insurance carrier is paying benefits to appellant, O'Boyle contends, Driscoll should not be allowed to benefit from statutory employer status when it is not obligated to pay benefits. The same argument, however, has been twice rejected by this Court. See: *Bartley v. Concrete Masonry Corp., supra; Cranshaw Con-*

8

*struction, Inc. v. Ghrist, supra.* See also: *Werner v. Big Sky Shop, supra.* It is an argument which more properly should be directed to the legislature.

The order entering summary judgment is affirmed.