Robert J. ANDERSON,

v.

UNITED STATES of America and De-
fense Personnel Support Center.

Civ. A. No. 90–0807.

United States District Court,
E.D. Pennsylvania.

July 30, 1990.

Joseph P. Briglia, Philadelphia, Pa., for plaintiff.

David H. Ward, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is a Federal Tort Claims Action arising out of an injury sustained by plaintiff Robert J. Anderson while working under contract with Native American Consultants, Incorporated ("NAC") at the Defense Personnel Support Center. Defendants, the United States of America and the Defense Personnel Support Center ("DPSC"), a part of the federal government,[1] have moved for summary judgment based upon two arguments: 1) that this court lacks subject matter jurisdiction over this action because plaintiff failed to exhaust his administrative remedies; and 2) that the Government was plaintiff's statutory employer and, therefore, that plaintiff's exclusive remedy is under the Pennsylvania Workmen's Compensation Act, Pa. Stat.Ann. tit. 77, §§ 1–1066.

For the reasons set forth below, I shall grant defendants' motion for summary judgment.

1. In this Memorandum and Order, I shall refer to the defendants collectively as "the Government."

2. Each party has presented a copy of the Employment Agreement between plaintiff and NAC. The Agreement covers a period from October 1, 1985 through September 30, 1986, and stipulates that it may be extended for such additional time as the parties may mutually agree. In light of the parties' contemplation of a contract extension in their Agreement, as well as their continued working relationship through, at least, the date of plaintiff's accident, I will treat the Agreement as having been extended and in effect on the date of plaintiff's accident.

3. In support of its motion for summary judgment, the Government asserts that the site of the accident was the Defense Personnel Support Center. *See* the Government's Memorandum of Law in Support of Motion for Summary Judg-

## I.

In 1985, the Defense Logistics Agency ("DLA") entered into a contract with the Small Business Administration ("SBA"), whereby the SBA was to supply automated data processing systems and engineering/technical support services to DLA. The SBA subsequently sub-contracted with NAC to provide those services. Plaintiff was employed by NAC to perform the duties of a computer programmer beginning on October 1, 1985. This contract envisioned Mr. Anderson's employment as involving the SBA/NCA sub-contract. His duties were to be performed at various sites, including the DPSC.

On February 10, 1988,[2] while plaintiff was holding the cafeteria door at the DPSC[3] open for his supervisor, the door prematurely shut on plaintiff's right hand. As a result of this accident, the first digit of the small finger of plaintiff's right hand was amputated.

On or about January 12, 1990, plaintiff commenced an administrative claim pursuant to section 2675(a) of the Federal Tort Claims Act ("FTCA") by submitting to the Office of Installation Services[4] a copy of his properly completed, although undated, Standard Form 95, entitled "Claim for Damage, Injury or Death." Shortly thereafter, on February 5, 1990, plaintiff filed this civil action.

ment, at 1. However, in its reply to plaintiff's response, the Government asserts that the incident occurred at the Defense Systems Automation Center. *See* the Government's Response to Plaintiff's Reply Letter, at 3–4. Plaintiff contends that the accident occurred at the Defense Personnel Support Center. *See* Government Exhibit B.

I note that, regardless of which location is correct, both are units of the Defense Logistics Agency, both are located at 2800 South 20th Street in Philadelphia, PA, and both are units of the Department of Defense, an agency of the United States Government.

4. The *Office of Installation Services is* responsible for processing any claims against the United States made pursuant to the FTCA. *See* Government Exhibit E, Affidavit of Anna M. Robbins.

## II.

### A. Subject Matter Jurisdiction

#### 1. *Jurisdiction Under The Federal Tort Claims Act*

The United States argues that this suit is jurisdictionally deficient because plaintiff failed to comply with the administrative prerequisites to the filing of an action against the United States, as set forth in section 2675 of the FTCA, 28 U.S.C. § 2675.

The United States, as sovereign, is immune from suit, unless it waives its sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *see also Heller v. United States*, 776 F.2d 92, 95 (3d Cir. 1985). Section 2671 of the FTCA, 28 U.S.C. § 2671, is a waiver by the United States to a variety of suits sounding in tort.

Section 2675 of the FTCA provides in relevant part that

> An action shall not be instituted upon a claim against the United States for damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government acting within the scope of his office or employment, unless claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing.... The failure of the agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim....

28 U.S.C. § 2675(a) (Supp.1990).

The Government's waiver of immunity must be strictly construed by the courts. *See Sherwood*, 312 U.S. at 590, 61 S.Ct. at 771. The filing of an administrative claim is a jurisdictional requirement and is "an absolute prerequisite to maintaining a civil action against the Government for damages arising from a tortious occurrence." *Meeker v. United States*, 435 F.2d 1219, 1220 (8th Cir.1970). *See also Cooper v. Perkiomen Airways Ltd.*, 526 F.Supp.

1086 (E.D.Pa.1981). This requirement cannot be waived. *See Pennsylvania v. National Ass'n of Flood Insurers*, 520 F.2d 11, 23–24 (3d Cir.1975); *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971).

#### 2. *Presentment Of The Administrative Claim*

■ In an FTCA case, the court is the trier of fact. *Murray v. United States*, 604 F.Supp. 444, 445 (E.D.Pa.1985). In the present case, the parties disagree about when plaintiff properly commenced his administrative claim. As a prerequisite to suit under the FTCA, a claim must be "presented" to the appropriate federal agency. 28 U.S.C. § 2675(a). The mere mailing of an administrative claim will *not* satisfy the requisite presentment. "[A] claim shall be deemed to have been presented when a federal agency *receives* from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for ... personal injury ... alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a) (1983) (emphasis added).

■ Plaintiff asserts that he filed the appropriate claim by way of a letter from his attorney dated June 13, 1988, of which the Government acknowledges receipt. However, this letter failed to adhere to the requirement of stating "money damages in a sum certain." *See Government Exhibit B; see also Bialowas v. United States*, 443 F.2d 1047, 1050 (3d Cir.1971). Because of the failure of the letter to comply with the FTCA's requirement of stating money damages in a sum certain, this letter cannot be regarded as a proper administrative claim.

Plaintiff also contends that he supplemented this letter by transmitting Form 95 to the Government on March 30, 1989. However, the DPSC has no record of receipt of a Form 95 from plaintiff prior to January 1990, and plaintiff has not presented this court with a record of receipt. Therefore, because plaintiff has not met his

burden[5] of establishing presentment through a receipt, I cannot conclude that plaintiff's administrative claim was properly commenced on or about March 30, 1989. *See Polk v. United States*, 709 F.Supp. 1473, 1474 (N.D.Iowa 1989) (plaintiff's failure to use registered mail in order to establish government's receipt of claim precluded court from finding that the request had been timely filed within the statutory six-month period because the government official to whom plaintiff's claim was sent denied receipt and plaintiff gave no evidence to contrary); *Crack v. United States*, 694 F.Supp. 1244, 1246 (E.D.Va.1988) (claimant mailed notice of claim, but claim was not received by the agency; presentment must include receipt).

■ On December 20, 1989, as a result of an injury into the status of his administrative claim, plaintiff learned that the Government had no record of receiving his Form 95, which he allegedly mailed on or about March 30, 1989. *See* Government Exhibit C. After that inquiry, plaintiff forwarded to the Government a copy of his Form 95, of which the Government acknowledges receipt on or about January 12, 1990. *See* Government Exhibit E. Therefore, I conclude that plaintiff properly presented his administrative claim on January 12, 1990.

### 3. *Prematurity of Suit*

Clearly, plaintiff could not have instituted this action without first having filed an administrative claim. The key issue, therefore, is whether, because plaintiff filed suit prior to either a final denial from the agency or the passage of six months, this court properly has jurisdiction. The question is particularly interesting since, in the interim, the statutory six-month period, after which plaintiff could have properly commenced suit, has passed.

■ The courts have met this issue with mixed results. Some courts have not hesitated to strictly apply section 2675(a) in cases in which, for example, plaintiffs have regarded their administrative claims as a mere formality. *Insurance Co. of North America v. United States*, 561 F.Supp. 106, 117–118 (E.D.Pa.1983) (court dismissed complaint which was filed three days after presentment of administrative claim); *Schaefer v. Hills*, 416 F.Supp. 428, 428–29 (S.D.Ohio 1976) (court dismissed complaint which was filed three days after presentment of administrative claim). However, other courts have recognized the futility of requiring a claimant to refile his suit. *Kubrick v. United States*, 581 F.2d 1092, 1098 (3d Cir.1978), *rev'd on other grounds*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (even though lawsuit was commenced prior to initiation of administrative proceedings, "where the administrative claim is denied before any substantial progress had been made in the pending litigation, the suit need not be refiled to be effective"); *McCormick v. Cooley*, 458 F.Supp. 776, 777–78 (W.D.Pa.1978) (jurisdictional defect cured without necessity of plaintiff refiling suit because six months of agency inaction had passed and no substantial progress had been made in the case).

In *Insurance Company of North America,* the court noted:

> *Although in some cases the jurisdictional defect has been considered cured where the six month period has elapsed prior to any substantial progress in the litigation* [citing *Kubrick* ], *the court does not believe this should be the case here where the filing of the lawsuit within three days of submitting the administrative claim can only be considered a deliberate flouting of the requirement that an agency have six months free of litigation to attempt to resolve the matter.*

561 F.Supp. at 118 (emphasis added).

In the present case, looking at the facts in the light most favorable to the non-movant, plaintiff has attempted to establish his administrative claim since June 1988. Assuming, as plaintiff contends, that he sent his Form 95 to the Government in March 1989, he was diligent in his inquiry in De-

---

**5.** Plaintiff has the burden of establishing presentment. *See Bailey v. United States*, 642 F.2d 344, 346 (9th Cir.1981); *Murray v. United States*, 604 F.Supp. at 445.

cember 1989 regarding the status of his claim. Upon learning that his Form 95 had not been received, he filed a copy of that form and several weeks later initiated this lawsuit.

Although the procedural requirements of section 2675(a) are prerequisites to my jurisdiction, at this point six months have already passed since plaintiff's presentment of his administrative claim. Hence, were plaintiff to file his suit today, I would indeed have jurisdiction. Further, I conclude that plaintiff did *not* "deliberately flout" the requirements of section 2675(a). No interests of judicial economy or administrative prerogative would be served by not reaching the merits of plaintiff's case at this time.

### B. The Statutory Employer Defense

I now turn to the merits of plaintiff's case. The Government's contract with NAC expressly required NAC to provide workmen's compensation insurance to its employees. In spite of this explicit requirement, the Employment Agreement between NAC and Anderson provided (1) that NAC would *not* provide plaintiff with workmen's compensation insurance and (2) that plaintiff agreed to hold NAC, or any of its clients, harmless for any damages sustained as a result of any injuries incurred while working on behalf of NAC.[6] The Agreement described plaintiff's relationship with NAC as that of an independent contractor.

The unfortunate fact of this case is that plaintiff was injured during the course of his employment with NAC while working at a federal government facility. He has been without relief from his financial losses sustained from that injury. Apparently under the assumption that he was not entitled to workmen's compensation benefits, plaintiff filed suit under the FTCA for damages against the Government. In turn, the Government asserts that, as plaintiff's statutory employer, it is immune from tort liability and that its liability is limited to that set forth under Pennsylvania's Workmen's Compensation Act.

### 1. *The Applicable Law*

Under the FTCA, the liability of the United States is construed "in accordance with the law of the place where the act or omission occurred" and "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §§ 1346(b) and 2674. Because plaintiff's injury occurred in Pennsylvania, I must apply the law of this Commonwealth. In this pursuit, I will examine the relevant provisions of Pennsylvania's Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, §§ 1–1066.

Generally, workmen's compensation laws are designed to assure benefits to employees for work related injuries. In essence, these laws are a matter of public policy. Regardless of fault, the injured employee is guaranteed compensation, and in exchange, the employer is insulated from potential tort liability to that injured employee.[7]

---

**6.** Plaintiff's Employment Agreement with NAC provided in relevant part:

4. D. In consideration of the fee received, CONSULTANT understands and agrees to hold *NACI or any of its clients harmless as a result of injury which may be sustained as a result of any injuries while working on NACI's behalf. It is further understood that CONSULTANT is not being covered for any workers compensation insurance....*

....

12. CONSULTANT hereby releases NACI from any and all liability whatsoever arising out of any sickness or injury to CONSULTANT, or from any loss or damage to CONSULTANT's property occurring in the course of performing any task under this AGREEMENT.

**7.** The liability of an employer to an employee under the Workmen's Compensation Act is exclusive of all other remedies.

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

Pa.Stat.Ann. tit. 77, § 481(a) (Purdon Supp. 1990)

*See* Attachment to the Government's Response to Plaintiff's Reply Letter (emphasis added).

Prior to 1974, Pennsylvania allowed an employee and his employer to agree *not* to be bound by the Workmen's Compensation Act. However, in 1974, the legislature redrafted the statute to provide as follows:

### § 431. Compensation according to schedule; injury or death self-inflicted or caused by violation of law

Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence....

Pa.Stat.Ann. tit. 77, § 431 (Purdon Supp. 1990).[8] As Pennsylvania courts have noted: "The present statute contains no elective compensation language. Instead, it provides that contractors and employers are to pay compensation as mandated by the Act, unless the subcontractor (§ 461)[9] or hiring employer (§ 462), primarily liable has secured its payment." *Cranshaw Const. Inc. v. Ghrist*, 290 Pa.Super. 286, 292, 434 A.2d 756, 759 (1981).

The term "statutory employer" refers to an entity who, for the purposes of workmen's compensation laws, acts in the capacity of an employer, even though he may not be known as an employer in actual practice. Pennsylvania's Workmen's Compensation Act defines "statutory employer" as follows:

**8.** The old version of section 431 provided in relevant part as follows:

> **§ 431. Agreement accepting article; compensation according to schedule; injury or death self-inflicted or caused by violation of law**
> When employer and employe *shall by agreement,* either express or implied, as hereinafter provided, *accept the provisions of article three of this act,* compensation for personal injury to, or for the death of such employe, by an accident, in the course of his employment, shall be paid in all cases by the employer, without regard to negligence....

Pa.Stat.Ann. tit. 77, § 431 (Purdon 1952) (emphasis added).

**9.** Section 461 provides in pertinent part:

> **§ 461. Coverage of employees of subcontractor; subcontractor; exception**
> A contractor who subcontracts all or any part of a contract and his insurer shall be

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

Pa.Stat.Ann. tit. 77, § 52 (Purdon 1952).[10]

■ In *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), the Pennsylvania Supreme Court listed five elements necessary to establish the status of "statutory employer":

1. An employer who is under contract with an owner or one in position of an owner;

2. Premises occupied by or under the control of such employer;

3. A subcontract made by such employer;

4. Part of employer's regular business entrusted to such subcontractor; and

5. An employee of such subcontractor.

302 Pa. at 295, 153 A. at 425. When state law recognizes the "statutory employer" concept, as does Pennsylvania, the United States should be entitled to immunity from suit if it meets the requirements necessary to be a statutory employer. *Roelofs v. United States*, 501 F.2d 87, 93 (5th Cir.

> liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor.
>
> ....

Pa.Stat.Ann. tit. 77, § 461 (Purdon Supp.1990).

**10.** In general, the purpose of statutory employer provisions "is to afford workmen's compensation protection to injured employees of uninsured contractees by imposing secondary liability therefor upon the contractor who let out the work." *Jamison v. Westinghouse Electric Corp.*, 375 F.2d 465, 468 (3d Cir.1967).

1974), *cert. denied,* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975).

### 2. *The Parties' Contentions*

The Government argues that it satisfies the requirements necessary to be considered plaintiff's statutory employer under Pennsylvania's Workmen's Compensation Act. In response, plaintiff asserts that the fourth element of the *McDonald* test has not been met and, therefore, that defendant's motion must be denied. Additionally, plaintiff contends that, because he was an independent contractor for NAC, he is not bound by the provisions of the Workmen's Compensation Act and, thus, is permitted to bring this action for damages against the United States.

### 3. *Analysis*

I shall first address plaintiff's employment arrangement with NAC.[11] Mr. Anderson's Employment Agreement with NAC provided in pertinent part:

1. This Agreement shall cover a period 1 October 1985 thru 30 September 1986. This period will represent 1880 hours (maximum) of actual work. This agreement may be extended for such additional time as the parties may mutually agree. This agreement may also be terminated by NACI or the consultant by giving a thirty day (30) advance written notice....

2. *NACI hereby employs CONSULTANT as an independent consultant to NACI* to perform duties of a computer programmer.

....

10. Consultant is retained and employed by NACI only for the purposes and to the extent set forth in this agreement, and *his relation to NACI shall,* during the period or periods of his employment and services hereunder, *be that of an independent consultant.... CONSULTANT shall not be considered under the provisions of this Agreement or otherwise as having an employee status....*

*See* Attachment to the Government's Response to Plaintiff's Reply Letter (emphasis added).

Plaintiff's contract with NAC goes to great lengths to classify him as an "independent contractor." However, "[t]he mere labelling of [Anderson] as an independent contractor in the Agreement does not determine his legal status." *Rolick v. Collins Pine Co.,* 708 F.Supp. 111, 114 (W.D. Pa.1989). "The court must make an independent evaluation of the terms of the contract and of all of the surrounding circumstances." *Id.* Indeed, "a wrong label deliberately attached to a bundle of circumstances cannot alone alter the relationship which the law will determine from the facts." *Swartz v. Eberly,* 212 F.Supp. 32, 34 (E.D.Pa.1962).

■ An individual is "an independent contractor," as opposed to "an employee," if he has the "freedom to choose the means by which [his] work is to be done, or freedom from the right of control over it" by another. *Id.* In the present case, although NAC attempted to create the illusion that Anderson had sole control over his work, in reality NAC had more than substantial control over Anderson's work. The Employment Agreement dictated plaintiff's duties and hours, as well as the sites at which plaintiff would perform his responsibilities. In effect, paragraph 1 of the Agreement provides plaintiff with, what can reasonably be interpreted as, a forty-hour work week. Therefore, because plaintiff did not have the "freedom to choose the means by which [his] work [was] to be done, or freedom from the right of control over it" by [NAC], I conclude that plaintiff's relationship with NAC was that of employee, rather than independent contractor.

■ As already noted, Pennsylvania's Workmen's Compensation Act is mandatory—not elective. If plaintiff had been an independent contractor, his contractual waiver of workmen's compensation bene-

---

**11.** I note that, in plaintiff's Letter Brief in response to defendants' motion for summary judgment, plaintiff concedes that the statutory employer defense fit the facts of this case as to the

fifth element of the *McDonald* analysis—that plaintiff was in fact an employee of the subcontractor NAC. Nonetheless, I shall briefly discuss plaintiff's employment status with NAC.

fits may have been valid. But plaintiff, as I have concluded, was in fact an employee and, as such, did *not* have the option to waive the provisions of the Workmen's Compensation Act. Neither did plaintiff have the option to waive his right to sue for damages.[12] As an employee, plaintiff's exclusive remedy against either his immediate employer or his statutory employer is under the Workmen's Compensation Act. Thus, the only remaining issue is whether, at the time of plaintiff's accident, the Government was plaintiff's statutory employer, entitled to the same protection and responsible for the same liability as NAC, plaintiff's immediate employer.

■ Plaintiff contests only the fourth of the five elements of the *McDonald* test necessary to establish the status of statutory employer.[13] Therefore, I will only address the fourth element—whether the work entrusted to NAC was part of the SBA's regular business. This requirement is met when the subcontracted work was an obligation assumed by the principal contractor (SBA) under its contract with the owner (DLA). "[W]hile the principal contractor may not directly perform a particular part of his general obligation, choosing instead to subcontract it, nevertheless he may accurately be said to be in the business of assuming the broad obligations of a principal contractor and therefore equally to be in the business of letting out portions of his undertaking to others to perform on his behalf." *Jamison v. Westinghouse Elec. Corp.*, 375 F.2d 465, 468–69 (3d Cir. 1967). Consequently, the fourth element of the statutory employer defense is satisfied whenever "the subcontracted work was an obligation assumed by a principal

contractor under his contract with the owner." *Werner v. Big Sky Shop*, 630 F.Supp. 444, 447 (E.D.Pa.1985). *See also O'Boyle v. J.C.A. Corp.*, 372 Pa.Super. 1, 4, 538 A.2d 915, 917 (1988).

The statutory grant of power to the SBA provides in relevant part:

**§ 637. Additional powers**

**(a) Procurement contracts; subcontracts to disadvantaged small business concerns; performance bonds; contract negotiations; definitions; eligibility; determinations; publication; recruitment; construction subcontracts; annual estimates; Indian tribes**

(1) It shall be the duty of the Administration and it is hereby empowered, whenever it determines such action is necessary or appropriate—

(A) *to enter into contracts with the United States Government and any department, agency, or officer thereof having procurement powers obligating the Administration to furnish* articles, equipment, supplies, *services,* or materials *to the Government* or to perform construction work for the Government. . . .

(B) *to enter into contracts with such agency* as shall be designated by the President, *to furnish* articles, equipment, supplies, *services,* or materials, or to perform construction work *for such agency. . . .*

(C) *to arrange for the performance of such procurement contracts by negotiating or otherwise letting subcontracts* to socially or economically disadvantaged small business concerns *for* construction work, *services,* or the

---

**12.** Section 204 of Pennsylvania's Workmen's Compensation Act provides in relevant part as follows:

> No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed

in consideration of such benefits shall be void. . . .

Pa.Stat.Ann. tit. 77, § 71 (Purdon Supp.1990).

**13.** In his Letter Brief submitted in response to defendants' motion for summary judgment, plaintiff states that "[t]he statutory employer defense fits this case as to four of the five elements. . . . However, based on the facts that have been determined to date, we cannot know if the work contracted by the subcontractor was part of the government agency's regular business."

manufacture, supply, assembly of such articles, equipment, supplies, materials, or parts thereof, or servicing or processing in connection therewith, or such management services as may be necessary to enable the Administration to perform such contracts.

15 U.S.C. § 637 (Supp.1990) (emphasis added).

As is clearly set forth in 15 U.S.C. § 637, part of the regular business of the SBA, an agency of the United States Government, is (1) to enter into contracts with other agencies of the United States Government to furnish services to those agencies and (2) to arrange for the performance of those services by negotiating or otherwise letting subcontracts. In the present case, the SBA entered into a contract with the DLA, an agency of the United States Government, to supply the DLA with services, in particular computer engineering and technical support services. In turn, the SBA arranged for the performance of those services by sub-contracting with NAC. Therefore, the work entrusted to NAC was part of the regular business of the SBA because providing the DLA with computer engineering and technical support services was an obligation assumed by the SBA under its contract with the DLA. *See Werner*, 630 F.Supp. at 447; *O'Boyle*, 372 Pa.Super. at 4, 538 A.2d at 917. Because the Government has satisfied the fourth, and only contested, element of the *McDonald* test, I conclude that the Government was plaintiff's statutory employer at the time of plaintiff's accident on February 10, 1988.

### III.

This court has jurisdiction over the present action because (1) six months have passed since plaintiff presented his administrative claim, (2) plaintiff did *not* deliberately flout the requirements of 28 U.S.C. § 2675(a), and (3) no interests of judicial economy or administrative prerogative would be served by not reaching the merits of plaintiff's case at this time.

Since the Government satisfies the only contested element of the statutory employer defense as set forth in *McDonald*, I

conclude that, as a statutory employer, the Government is entitled to immunity from suit. Therefore, the Government's sole liability is responsibility for workmen's compensation benefits under section 302(a) of Pennsylvania's Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, § 461 (Purdon Supp.1990). As a statutory employer, the Government is "liable to the injured workman 'in the same manner and to the same extent as his own employee.'" *Werner v. Big Sky Shop*, 630 F.Supp. 444, 448 (E.D. Pa.1985) (quoting Pa.Stat.Ann. tit. 77, § 52). Accordingly, the Government is entitled to immunity from plaintiff's suit in tort.