Ishmil AL–AMEEN, Plaintiff,

v.

ATLANTIC ROOFING CORP., Defendant.

and

Atlantic Roofing Corp., Third–Party Plaintiff,

v.

Neuber Environmental Services, Third–Party Defendant.

Civil Action No. 99–3915.

United States District Court, E.D. Pennsylvania.

July 5, 2001.

Lawren J. Nelson, Edelstein and Martin, Philadelphia, PA, for plaintiff.

Robert M. Ruzzi, Law Offices of J. Mark Pecci, II, Philadelphia, PA, William H. Catto, Post & Schell, PC, Philadelphia, PA, for defendants.

## EXPLANATION and ORDER

ANITA B. BRODY, District Judge.

Plaintiff Ishmil Al–Ameen alleges that, on August 6, 1997, while working to remove the old roof of the East High School in West Chester, Pennsylvania, he slipped on roofing insulation materials negligently left scattered about by the general contractor on the job, Atlantic Roofing Corporation ("Atlantic"). The slip allegedly caused Al–Ameen to fall from the roof and incur serious personal injuries.

On August 3, 1999, Al–Ameen filed this tort claim against Atlantic.[1] Atlantic subsequently filed a third-party complaint against its subcontractor on the West Chester job, Neuber Environmental Services, Inc. ("Neuber"). Neuber, which was responsible for the removal of the old roof, employed Al–Ameen at the time of the accident. In its third-party complaint, Atlantic alleged that Neuber was required to indemnify Atlantic pursuant to the terms and conditions set out in their subcontract agreement.

Neuber has moved for summary judgment on two grounds. Neuber claims that the primary defendant, Atlantic, and therefore Neuber, should be dismissed from the action under the statutory employer doctrine. Defendant Atlantic, in its answer to Neuber's motion for summary judgment, incorporates Neuber's argument for dismissal pursuant to the statutory employer doctrine, and asks the court to enter judgment in its favor. Given this answer, Atlantic has joined in the motion for summary judgment on the basis that it is immune to suit as Al–Ameen's statutory employer. Neuber also claims that the indemnity provision in the subcontract with Atlantic did not validly waive its immunity from suit under section 481(b) of the Pennsylvania Workers' Compensation Act ("the Act"). 77 P.S. § 1 *et seq.*

I will grant Neuber and Atlantic's motion for summary judgment and dismiss both defendants pursuant to the statutory employer doctrine.

*Summary Judgment Standard*

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court should determine whether there are factual issues that merit a trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate if no factual issues exist and the only issues before the court are legal. *See Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995).

At summary judgment, the nonmoving party receives the benefit of all reasonable inferences. *See Sempier,* 45 F.3d at 727. The motion should be granted if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

1. Federal court jurisdiction over this case is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Al–Ameen is a citizen of the state of Delaware, Atlantic is a citizen of Pennsylvania, Neuber is a citizen of Pennsylvania, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

*Statutory Employer Doctrine*

■ Neuber argues that Atlantic, and therefore Neuber, should be dismissed pursuant to the statutory employer doctrine. Defendant Atlantic has joined Neuber's request to dismiss both parties pursuant to the theory that Atlantic was Al-Ameen's statutory employer.

■ As a *quid pro quo* for being subjected to a statutory, no-fault system of compensation for worker injuries, the Act provides employers immunity from lawsuits by employees for any "injury" defined within it. *See Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d 548, 550 (1987). The Act subjects both "statutory" employers and actual employers to its terms, defining a statutory employer as:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52. As a statutory employer may be held liable for payment of benefits, it also enjoys the tort immunity afforded employers under the Act.[2]

■ In *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 153 A. 424 (1930), the Supreme Court of Pennsylvania set forth the five-part test for determining whether a general contractor qualifies as the statutory employer of a subcontractor's employee. To create the relation of statutory employer under the Act, all of the following conditions must be met:

> (1) An employer [Atlantic] who is under contract with an owner [West Chester Area School District] or one in the position of an owner.
>
> (2) Premises occupied by or under the control of such employer [Atlantic].
>
> (3) A subcontract made by such employer [Atlantic].
>
> (4) Part of the employer's [Atlantic's] regular business intrusted to such subcontractor [Neuber].
>
> (5) An employee [Al-Ameen] of such subcontractor [Neuber].

*Id.* 153 A. at 426. Plaintiff Al-Ameen argues that Atlantic does not qualify as a statutory employer under the Act because it fails the second and fourth elements of the test.[3]

---

2. The Act grants employers immunity from suit in section 481(b), which reads:

> In the event that injury or death to an employe is caused by a third party, then such employe . . . may bring their action at law against such third party, but the employer . . . shall not be liable to a third party for damages, contribution, or indemnity in any action law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

77 P.S. § 481(b).

A statutory employer maintains immunity even if the employee's actual employer provides full compensation under the Act. "[A] general contractor is still entitled to its histor-

ic immunity as a 'statutory employer' from suit for common law negligence. This is true even though the subcontractor which directly employed the injured worker carried workers' compensation insurance which paid benefits for the worker's injuries." *Fonner v. Shandon, Inc.,* 555 Pa. 370, 724 A.2d 903, 907 (1999).

3. Al-Ameen also argues that element three is not met, as the subcontract was signed only by Neuber and not by Atlantic. Because a properly executed subcontract did not exist at the time of the accident, Al-Ameen argues, article three of the *McDonald* test is not met.

The law of Pennsylvania is clear that "a contract is created when there is mutual assent to the terms of a contract by the parties

To meet the second element of the *Mc-Donald* test, Atlantic must have occupied or controlled the premises.[4] Atlantic can satisfy the second element with a showing that it occupied the premises. Uncontroverted testimony indicates that an Atlantic supervisor, William Bradney, was present at the site on a daily basis.[5] In addition, Neuber and Atlantic cite deposition testimony indicating that Atlantic employees were regularly present on the premises at the same time as Neuber employees.[6] Al-Ameen, in response, does not produce evidence that controverts the presence of Atlantic employees at the job site. Al-Ameen alleges that Atlantic project manager Chris Conn testified that Atlantic and Neuber employees were on the site together "maybe one time." Closer examination of the testimony, however, indicates that Conn had been asked about instances when the Atlantic and Neuber employees actually worked together, not when they occupied the premises simultaneously, if working independently. Deposition testimony of Chris Conn, Plaintiff's Reply in Opposition to Third Party Defendant, Neuber Environmental Services, Inc.'s Motion for Summary Judgment ("Plaintiff's reply"), Exhibit B, pp. 26–27. Nor can Al-Ameen controvert his own deposition testimony, which mentions observing and even conversing with Atlantic employees at the site. Deposition testimony of Ishmil Al-Ameen, Third Party Defendant Neuber Environmental Services, Inc.'s Motion for Summary Judgment ("Neuber's Motion"), Exhibit B, pp. 56, 63, and 111.

Atlantic may also satisfy the second element by showing that it exercised control over the premises. To do this, Atlantic must show actual control of the premises; a mere showing of a right of control will not satisfy element two of the test. *See Dougherty v. Conduit & Foundation Corp.*, 449 Pa.Super. 405, 674 A.2d 262, 266 (1996) (citing *Donaldson v. Commonwealth, Dept. of Transp.*, 141 Pa.Cmwlth.

---

with the capacity to contract." *Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Board*, 559 Pa. 56, 739 A.2d 133, 136 (1999)(citing *Taylor v. Stanley Co. of America*, 305 Pa. 546, 158 A. 157 (1932)). As a general rule, signatures are not required unless such signing is expressly required by law or the intent of the parties. *Shovel Transfer and Storage*, 158 A.2d at 136 (citing *L.B. Foster Co. v. Tri–W Construction Co.*, 409 Pa. 318, 186 A.2d 18, 19 (1962)). Plaintiff does not produce evidence that a statute or the parties' intent required Atlantic's signature on this subcontract to render it enforceable. Therefore, I find that Atlantic satisfies the third element of the test, as it had an enforceable subcontract with Neuber.

4. Pennsylvania courts read prong two in a strictly disjunctive manner. *See Dougherty v. Conduit & Foundation Corp.*, 449 Pa.Super. 405, 674 A.2d 262, 266 (1996); *Davis v. City of Philadelphia*, 153 Pa.Super. 645, 35 A.2d 77, 80 (1943).

5. Deposition testimony of William Bradney, Third Party Defendant Neuber Environmental Services, Inc.'s Motion for Summary Judgment ("Neuber's Motion"), Exhibit F, p. 10. In response, plaintiff cites the portion of Bradney's testimony indicating that he never directed Neuber people or employees. Deposition testimony of William Bradney, Plaintiff's Reply in Opposition to Third Party Defendant, Neuber Environmental Services, Inc.'s Motion for Summary Judgment ("Plaintiff's reply"), Exhibit E, p. 11. That testimony does not controvert the assertion that Bradney was present at the site on a daily basis.

6. Deposition testimony of William Bradney, Neuber's Motion, Exhibit F, pp. 10, 17 (Atlantic and Neuber employees often on the site at the same time); deposition testimony of John Yanan, Neuber's Motion, Exhibit G, p. 92 (Neuber employees at site given instruction on how much roof to tear off); deposition testimony of John Kirkpatrick, Neuber's Motion, Exhibit I, pp. 22–24, 74, and 87 (Atlantic and Neuber employees regularly on the premises at the same time; Atlantic employees present on the day of Al-Ameen's accident; Atlantic and Neuber employees at times worked together to throw debris off the roof).

474, 596 A.2d 269 (1991)). Atlantic not only occupied the premises, but also fulfills the second element of the test because it actually controlled the premises at the time and place of Al–Ameen's accident.

The most persuasive evidence of control is Al–Ameen's own deposition testimony. Al–Ameen specifically admits that Atlantic had control over the roofing materials on which he slipped, and he argues that his accident resulted from directions given by the Atlantic foreman. At his deposition, Al–Ameen gave the following testimony:

Q: Now, the insulation that you stepped on which slid—

A: Yes.

Q: was anyone using that insulation at the time? Not the particular piece you stepped on, but other insulation?

A: Yes. Atlantic Roofing is using that insulation to put on the roof....

Q: And the foreman from Atlantic told you to walk on this?

A: Yes, he told me to walk on top of it.

Deposition testimony of Ishmil Al–Ameen, Neuber's Motion, Exhibit B, p. 111. That direct testimony is sufficient to determine that Atlantic did in fact have actual control over the job premises at the time and place of Al–Ameen's injury, and therefore satisfies the second part of the *McDonald* test.

Atlantic has produced additional evidence to show that it had actual control over the premises as required under Pennsylvania law. In *Perma–Lite of Pennsylvania v. Workmen's Compensation Appeal Board,* 38 Pa.Cmwlth. 481, 393 A.2d 1082 (1978), the Commonwealth Court found that the general contractor, Perma–Lite, did not exercise actual control over the premises at which the subcontractor's employee was injured, and therefore could not be considered a statutory employer

under the Act. *See Id.,* 393 A.2d at 1084. Perma-lite had subcontracted the entire job to the subcontractor and had never entered onto the premises. *See Id.* at 482–83, 393 A.2d 1082. Distinguishing *Perma–Lite,* the Commonwealth Court held in *Wright Demolition & Excavating Co. v. Workmen's Compensation Appeal Board,* 61 Pa.Cmwlth. 479, 434 A.2d 232 (1981), that the general contractor did exercise actual control over the premises where the subcontractor's employee was working. *See Id.* 434 A.2d at 234–35. In *Wright,* the general contractor had subcontracted only a portion of the work to be done, and had entered onto the property while the subcontractor's work was in progress; "[s]uch conduct goes beyond a mere right to control the premises and constitutes an exercise of actual control and dominion over the workplace." *Id.* at 235.; *see also Gordon v. Vaughan,* 1998 WL 401688 at *4 (E.D.Pa. June 30, 1998)(defendant bore its burden of demonstrating actual control "over the premises, not the day to day work of the subcontractor").

Atlantic has produced uncontroverted evidence sufficient to show that it had actual control of the premises at the time and place of Al–Ameen's accident. As in *Wright,* Atlantic subcontracted only a part of the work, namely, the demolition of the roof, and completed the rest of the work with its own employees. Atlantic had a full-time supervisor on the site daily, and, as noted in my discussion of Atlantic's occupancy of the premises, often had its employees on the site while Neuber's work was in progress. Atlantic instructed Neuber employees on how much roof to tear off. Deposition testimony of John Yanan, Plaintiff's reply, exhibit C, p. 92. In addition, Al–Ameen's own testimony establishes that an Atlantic foreman instructed him to walk on top of Atlantic's roofing materials, allegedly causing his accident. Atlantic does not need to show that it

managed the day-to-day activities of the Neuber workers to meet its burden of showing actual control. *See Gordon,* 1998 WL 401688 at *4. The evidence it has produced is adequate to show that Atlantic had actual control of the premises at the time and place of the accident, and therefore meets element two of the *McDonald* test.

To satisfy the fourth element of the *McDonald* test, defendants must show that the work subcontracted to Neuber was a part of Atlantic's regular business. Under Pennsylvania law, this requirement is met when the subcontracted work is an obligation assumed by the general contractor in its contract with the owner. *See Jamison v. Westinghouse Electric Corp.,* 375 F.2d 465, 468 (3d Cir.1967); *McCarthy v. Lepore & Sons Co., Inc.,* 724 A.2d 938, 943 (Pa.Super.Ct.1999); *O'Boyle v. J.C.A. Corp.,* 372 Pa.Super. 1, 538 A.2d 915, 917 (1988). In *Jamison,* the Third Circuit held that the regular business requirement is satisfied

> wherever the subcontracted work was an obligation assumed by a principle contractor under his contract with the owner. A clear illustration is the case of a general construction contractor all of whose obligations are fixed in the contract with the owner and who obviously will subcontract various portions of his contractual obligation. In such a case, while the principal contractor may not directly perform a particular part of his general obligation, choosing instead to subcontract it, nevertheless he may accurately be said to be in the business of assuming the broad obligations of a principal contractor and therefore equally to be in the business of letting out portions of his undertaking to others to perform on his behalf.

*Jamison,* 375 F.2d at 468–69.

Atlantic's obligations under the contract with the West Chester Area School District included both the removal of the old roof and the installation of a new roof at the East High School. Article 2 of that contract provided that "[t]he Contractor shall execute the entire work described in the Contract Documents." Neuber's Motion, Exhibit E, at Article 2. In addition, the "Summary of Work" attached to the contract indicated that the job involved removal of existing roofing systems and handling and disposal of asbestos-containing roof membranes. Neuber's Motion, Exhibit E, p. 01010–1 "Summary of Work." Atlantic's obligations under its contract to the West Chester Area School District included the work subcontracted to Neuber.

Al–Ameen does not dispute that Atlantic agreed and contracted to remove an old roof containing asbestos materials. Rather, he argues that it was impossible for Atlantic to assume the responsibility for asbestos handling and removal pursuant to the laws of the Commonwealth of Pennsylvania, because Atlantic was not certified and/or licensed in asbestos abatement. Therefore, the argument runs, as Atlantic could not legally perform the asbestos removal, the work subcontracted to Neuber could not be part of its contractual obligations.

Al–Ameen's argument is not persuasive. He seems to confuse Atlantic's ability to perform asbestos removal work with its ability to assume the obligation to execute a contract that involves asbestos removal. The fact that Atlantic was not able to perform the asbestos removal itself does not preclude a determination that it was obligated by contract to execute the subcontracted work. As Atlantic entrusted a part of contractual obligations to Neuber, the regular business requirement of the *McDonald* test is satisfied.

As Atlantic satisfies all five prongs of the *McDonald* test, I find that Atlantic

was Al–Ameen's statutory employer, and is therefore immune from suit under the Pennsylvania Workers' Compensation Act. 77 Pa. Cons.Stat. § 481(b). I will grant Neuber and Atlantic's motion for summary judgment and dismiss both Atlantic and Neuber from the action.

**AND NOW**, this day 3rd of June, 2001, it is **ORDERED** that Third–Party Defendant Neuber Environmental Services, Inc.'s Motion for Summary Judgment (docket entry no. 13, filed 11/20/00) is **GRANTED**. Defendant Atlantic Roofing Corporation and Third–Party Defendant Neuber Environmental Services, Inc. are hereby **DISMISSED** from the action.

It is further **ORDERED** that the Clerk shall close this case statistically.