Robert F. FULGHAM, Plaintiff,

v.

DANIEL J. KEATING CO.; Daniel J. Keating Construction Co.; Keating/Kemrodeo Joint Venture; Super Sky Products Inc.; Turner Construction Company; George Warner; Construction Safety Consultants, Inc.; The Graham Company; and John Does 1–10, jointly, severally, and in the alternative, Defendants,

v.

Mountain Pacific L.L.C., Third–Party Defendant.

Civil Action No. 01–0111(SSB).

United States District Court,
D. New Jersey.

Sept. 29, 2003.

Dennis P. Blake, Esq., Christine P. O'Hearn, Esq., Brown & Connery, LLP, Westmont, N.J., for Plaintiffs.

Francis T. McDevitt, Esq., Naulty, Scaricamazza & McDevitt, Ltd., Marlton, NJ, for Defendant Daniel J. Keating Co. and Keating/Kemrodeo.

Alan P. Bruce, Esq., Law Offices Of Edward H. Keiper, Pennsauken, NJ, for Defendant Super Sky Products, Inc.

Walter H. Iacovone, Esq., Margolis & Edelstein, Westmont, NJ, for Defendant Turner Construction Co.

Patrick C. Reeder, Esq., Delany & O'Brien, Esqs., Voorhees, NJ, for Third–Party Defendant Mountain Pacific, LLC.

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

BROTMAN, District Judge.

Presently before this Court are motions by Defendants Turner Construction Company, Daniel J. Keating Company and Super Sky Products, Inc. for summary judgment under Federal Rule of Civil Procedure 56 and a motion by Third–Party Defendant Mountain Pacific, L.L.C. to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment under Federal Rule of Civil Procedure 56.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

This case arises from the personal injury of an employee of Mountain Pacific Enterprises, LLC ("Mountain Pacific"), a

subcontractor, installing skylights in the High Speed Line station during renovations of Terminals B and C at the Philadelphia International Airport. On April 24, 1999, Robert F. Fulgham was working as a glazier, installing a "Z clip" into a skylight panel in the roof when he stepped onto a 2′ by 12′ board and fell to the platform below. *(See* Super Sky Statement of Undisputed Facts at 2). Fulgham sustained serious injuries from the fall. He was cited as having performed an unsafe act by failing to be "tied off" to a safety line in accordance with safety guidelines. (*See* Keating Statement of Undisputed Facts at 3). Mountain Pacific currently pays Fulgham workers' compensation benefits under the Pennsylvania Workers' Compensation Act, 77 P.S. § 1 et seq., as a result of this accident.

In 1998, the City of Philadelphia contracted with Daniel J. Keating Company ("Keating") to act as general contractor for the renovations at the Philadelphia International Airport. As general contractor, Keating was responsible for completing all of the work and labor associated with the renovation of the terminals. (*See* Defendant Keating's Statement of Facts). Keating subcontracted various labor, including the manufacture and installation of the skylights, to Super Sky Products, Inc. ("Super Sky"). Super Sky subcontracted the installation of the skylights to Mountain Pacific. The City of Philadelphia had also contracted with Turner Construction Company ("Turner"), in 1993, to serve as the engineer and construction manager for the renovation of the airport terminals. Turner did not contract directly with any of the above-mentioned contractors. (*See* Turner Statement of Undisputed Facts).

In January 2001, Fulgham filed a complaint against Keating, Turner and Super Sky, as well as various unknown supervisors, i.e. the "John Does," alleging that the companies and individuals were negligent in exercising reasonable care and providing proper safety procedures for the project. (*See* Plaintiff's Third Amended Complaint). Fulgham alleges that he suffered serious pain and incurred medical expenses, economic loses and lost wages as a result of this negligence. Fulgham asserts that he presently suffers from those injuries and will continue to suffer indefinitely. (*See id.* at 4). The defendants brought cross-claims against one another for indemnification and Super Sky brought a third-party complaint for indemnification against Mountain Pacific.

## II. *DISCUSSION*

### A. JURISDICTION

As the plaintiff and defendants are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000), this Court has jurisdiction over the present matter pursuant to 42 U.S.C. § 1332.

### B. CHOICE OF LAW

All of the parties are in agreement that Pennsylvania law applies to this case. The Court concurs. *See Veazey v. Doremus,* 103 N.J. 244, 510 A.2d 1187, 1189 (1986) (applying the governmental interest test to New Jersey choice of law analysis and applying the law of the state with the greatest interest in the issue). Pennsylvania has the greatest interest in this case, in which an employee, working in Pennsylvania, is injured at his workplace and is collecting workers' compensation under the Pennsylvania Workers' Compensation statute, 77 P.S. § 1 et. seq.

### C. STANDARD FOR SUMMARY JUDGMENT

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Fed.R.Civ.P. 56 provides that summary judgment may be

granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary

judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## D. DEFENDANT DANIEL J. KEATING COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant Daniel J. Keating Company moves for summary judgment, contending there are no genuine issues of material fact as to whether Keating qualifies as a "statutory employer" under the Pennsylvania Workers' Compensation Act and therefore it is entitled to immunity as a matter of law.

The Pennsylvania Workers' Compensation Act holds employers liable to compensate any employee injured in the course of employment. The Act expands this liability to "statutory employers" as well as common law employers. It holds general contractors, who subcontract parts of their labor, liable for the payment of workers' compensation benefits to those subcontractors' employees whose immediate employers default on payments. The Act states in relevant part:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or assistant hired by an employee or contractor, for the performance upon such premises of a part of an employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52.

The term "contractor" under this provision includes "a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken." 77 P.S. § 25. The purpose of the Act is to guarantee injured employees compensation by clearly enumerating responsible parties. *Stipanovich v. Westinghouse Electric Corp.*, 210

Pa.Super. 98, 231 A.2d 894 (1967). To accomplish this goal, the Act holds statutory employers liable for benefits in a "reserve status," calling for their payment of benefits to injured employees whose direct employers fail to pay. *See Fonner v. Shandon, Inc.*, 555 Pa. 370, 377, 724 A.2d 903, 906 (Pa.1999). In exchange for this secondary liability, the Act serves as the exclusive remedy for injured workers, "in place of any and all other liability to such employes." 77 P.S. § 463.

■■■ The Act provides for immunity for statutory employers as well as common law employers "as a quid pro quo for being subjected to a statutory, no fault system of compensation for worker injuries ...." *Al–Ameen v. Atlantic Roofing Corp.*, 151 F.Supp.2d 604, 606 (E.D.Pa.2001). However, in order for an employer to qualify as a statutory employer and receive immunity under the Act, it must satisfy the five elements set by the Pennsylvania Supreme Court in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930). An employer will receive immunity from negligence suits brought by injured workers as a statutory employer if it is: (1) an employer who is under contract with an owner or one in the position of the owner; (2) the premises are occupied by or under the control of such employer; (3) a subcontract was made by such employer; (4) a part of the employer's regular business was entrusted to such contractor; and (5) the claim is brought by an employee of such subcontractor. *McDonald*, 302 Pa. at 295, 153 A. at 426 (Pa.1930).

■■■ Once an employer qualifies as a statutory employer under the Act, it is immune from suit even if the injured worker's immediate employer provides benefits. The statutory employer "retains its common law immunity in exchange for its secondary liability." *Cox v. Turner Construction Co.*, 373 Pa.Super. 214, 223 n. 5, 540 A.2d 944, 947 n. 5 (Pa.Super.1988).

Keating alleges that it meets the five part statutory employer test and is therefore immune from any negligence suit, regardless of the fact that Plaintiff's immediate employer, Mountain Pacific L.L.C. provides worker's compensation benefits. Plaintiff does not dispute the fact that if Keating qualifies as a statutory employer, it is immune from any other type of liability. Further, Plaintiff concedes that Keating meets the first, fourth and fifth elements of the statutory employer test. Plaintiff, however, contends that Keating fails to establish the second and third prongs of the test and therefore is not entitled to immunity.

■■■ The second prong of the test for statutory employer immunity requires that Keating "occupy or control" the premises upon which the worker was injured. Plaintiff alleges that Keating failed to establish sufficient control of the premises and asserts that the control cannot be established by the presence of a supervisor alone but requires evidence of "actual control."

In 1998, Defendant Keating contracted with the City of Philadelphia to serve as the general contractor for the renovations of the terminals at the Philadelphia International Airport. It subcontracted several parts of the labor to be performed by subcontractors at the work site. The Act does not require that Keating have "exclusive" control of the premises, only that it had control of the workplace. *Colloi v. Philadelphia Electric Co.*, 332 Pa.Super. 284, 299, 481 A.2d 616, 623 (Pa.Super.1984). Pennsylvania courts have held that prong two of the test is disjunctive, such that an employer will meet this prong if it either controls or occupies the premises. *Dougherty v. Conduit & Foundation Corp.*, 449 Pa.Super. 405, 413, 674 A.2d 262, (Pa.Super.1996). Therefore, even if the evidence presented merely showed

that Keating occupied the premises rather than exercised actual control of the workplace, it would still satisfy the second element. *Zizza v. Dresher Mechanical Contractors Inc.*, 358 Pa.Super. 600, 604–605, 518 A.2d 302, 304 (Pa.Super.1986).

Here, Keating provided sufficient evidence of its occupation and control of the work site to fulfill the second element of the statutory employer test. As part of its role as general contractor, Keating was required by the City of Philadelphia to exercise charge and control of the entire renovation project. *See Dougherty*, 449 Pa.Super. at 413, 674 A.2d 262 (finding satisfaction of prong two where the contract delegated responsibility for the work site to the contractor and the contractor's superintendent supervised the subcontractor's employees). Keating exercised this control by employing an on-site supervisor who approved a safety plan for employees, conducted weekly safety inspections of the work site, and held weekly progress meetings. (*See* Exhibits to Keating's Statement of Undisputed Facts: Exhibit C, Deposition of William Barton; Exhibit E, Deposition of James Thomas Bigante; Exhibit K, Deposition of Stephen Lane; Exhibit L, Deposition of George Warner; Exhibit M, Deposition of Thomas Dunbar; Exhibit N, Deposition of Stephen John McKendrick; Exhibit O, Deposition of Richard Butler). This supervisor also had the power to remove employees who violated safety procedures and to authorize an increase in subcontractors' manpower and authorize overtime for subcontractors' employees. (*See* Exhibit N, Deposition of Stephen John McKendrick). Keating's representatives also walked the site and inspected for safety violations during periodic safety audits. (*See* Exhibit L, Deposition of George Warner). Keating has demonstrated that it exercised control over the premises and has met the second prong of the test. *See Mitchell v. W.S. Cumby & Son, Inc.*, 704 F.Supp. 65, 68–69

(E.D.Pa.1989) (finding sufficient control when the superintendent testified that he supervised the workers and the "whole operation"); *Pastore v. Anjo Construction Co.*, 396 Pa.Super. 58, 578 A.2d 21 (Pa.Super.1990) (finding control was adequate because the contractor had the responsibility and authority to operate the construction work site where the injury occurred).

■ Plaintiff also contends that Defendant Keating does not satisfy the third prong of the statutory employer test, namely that it did not make a subcontract with the injured worker's employer, as required under the Act, because Keating did not have a *direct* contractual relationship with Plaintiff's employer, Mountain Pacific. While Keating did not contract directly with Mountain Pacific, it does have a vertical contractual relationship with the subcontractor. Keating subcontracted the skylight project to Super Sky which subcontracted the installation to Mountain Pacific. There is no requirement under Pennsylvania law that the contractor contract directly with the subcontractor whose employee is injured in order to qualify as a statutory employer. *See Lascio v. Belcher Roofing Corp.*, 704 A.2d 642, 644 (Pa.Super.1997) (holding there is no requirement of an immediate contractual relationship so that general contractor could apply statutory employer defense against a claim by an employee of a sub-subcontractor). Plaintiff misreads *Cox v. Turner Construction Co.*, 373 Pa.Super. 214, 540 A.2d 944 (Pa.Super.1988), to require a direct contractual relationship with the Plaintiff's employer. *Cox*, however, only requires a vertical contractual relationship among the parties. In that case, the court refused to provide immunity for a contractor that had a horizontal contractual relationship with the immediate employer of the injured worker. In *Cox*, USS Realty Development

("USR") was named as construction manager for a project to construct a skyscraper in Pittsburgh. USR contracted with Turner to be the contractor and contracted separately with another company, Otis Elevator Company ("Otis") to install the elevators and escalators. *Cox*, 373 Pa.Super. at 217, 540 A.2d 944 at 945. The court held that because there was no contractual relationship between Turner and Otis, Turner could not claim statutory employer immunity from suit by an injured employee of Otis. *See also Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962 (Pa.Super.1987) (rejecting statutory employer immunity because there was no vertical relationship between the subcontractors who both contracted separately with the general contractor). Plaintiff's contention that Keating did not contract with the plaintiff's employer because its subcontract was one step removed was rejected in *McCarthy v. Dan Lepore & Sons Co., Inc.*, 724 A.2d 938, 941 (Pa.Super.1998).

> [T]he key element of statutory employer status is the vertical relationship between the general contractor, the subcontractor, and the sub-subcontractor, whose employee was injured … The vertical relationship is essential to the test for statutory immunity because, by virtue of the vertical relationship, all of the contractors up the ladder remain potentially liable under the Act for payment of the injured employee's workers' compensation benefits.

*McCarthy*, 724 A.2d at 941 (citations omitted); *see also Emery v. Leavesly McCollum*, 725 A.2d 807, 811–812 (Pa.Super.1999) (general contractor could assert statutory employer immunity in suit where it contracted with subcontractor who in turn contracted with the sub-subcontractor). In this case, Keating has a vertical contractual relationship because it subcontracted with Super Sky and Super Sky subcontracted with Plaintiff's employer, Mountain Pacific. *See Dume v. Elkcom Company, Inc.*, 368 Pa.Super. 280, 533 A.2d 1063 (Pa.Super.1987) (rejecting the contention that a direct contractual relationship is necessary to satisfy the third prong of the statutory employer test).

■ Plaintiff also challenges the constitutionality of the statutory employer defense. The Pennsylvania courts have refused to find the statutory employer defense unconstitutional noting that "the failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent." *Kenney v. Jeanes Hospital*, 769 A.2d 492, 497 (Pa.Super.2001). The Court declines to depart from this logic.

Plaintiff has been compensated for his injuries under the statutory scheme which the Pennsylvania legislature developed in order to protect workers and to ensure they receive benefits for workplace injuries. Once those benefits are provided, the Pennsylvania Workers' Compensation Act serves as the sole remedy for the injured worker. Since Plaintiff has already received benefits and continues to receive benefits from its immediate employer, Mountain Pacific, Plaintiff may not attempt any further recovery from a statutory employer such as Keating. *See Lavin v. Tony Depaul & Son*, 1995 WL 765720 (E.D.Pa.1995) ("So long as workers' compensation benefits for the employer-subcontractor's employees are provided, both the employer and the statutory employer are entitled to the protection of the Act from common law tort liability for work-related injuries."). Defendant Daniel J. Keating Company's motion for summary judgment is granted and Plaintiff's claims against it are dismissed.

■ Keating also moves for summary judgment as to the cross claims against it brought by Turner Construction Company.

The Pennsylvania Workers' Compensation Act strives to be the exclusive remedy for injured workers by limiting the rights of third-parties to recover from employers. Therefore, any indemnification provision concerning third-party negligence claims must be closely scrutinized by the court. *Gerard v. Penn Valley Constructors Inc.*, 343 Pa.Super. 425, 429, 495 A.2d 210, 212 (Pa.Super.1985). In order for an indemnification agreement to be effective under the Act, the alleged indemnitor must expressly agree to indemnify the indemnitee for claims brought by injured workers. *See Bester v. Essex Crane Rental Corp.*, 422 Pa.Super. 178, 185, 619 A.2d 304, 307 (Pa.Super.1993) (finding that in order to meet the standards for indemnification under the Pennsylvania Workers' Compensation Act, the agreement must "specifically use language which demonstrates that a named employer agrees to indemnify a named third party from liability for acts of that third party's own negligence which result in harm to the employees of the named employer"). Without this type of express indemnification, the agreement will be invalid as to third-party negligence claims. For the reasons discussed more fully below in Section F, there was no such express indemnification agreement between Turner and Keating and Keating has no responsibility to indemnify Turner. The Court grants Defendant Daniel J. Keating Company's motion for summary judgment against Turner Construction Company.

■ Keating provides no legal argument or factual evidence to support its motion for summary judgment against the remaining co-defendants. Keating has failed to carry its burden of establishing whether or not an express indemnification agreement was formed between those parties. Therefore, there are genuine issues of fact which need to be determined as to whether Keating is responsible to indemnify those defendants and summary judgment is denied.

## E. THIRD–PARTY DEFENDANT MOUNTAIN PACIFIC L.L.C.'S MOTION FOR SUMMARY JUDGMENT

Third–Party Defendant Mountain Pacific L.L.C. has moved to dismiss Super Sky's third-party complaint against it for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) or in the alternative for summary judgment under Fed.R.Civ.P. 56. Because the Court has looked beyond the pleadings, it will treat this motion as a motion for summary judgment under Fed.R.Civ.P. 56, as required by Fed.R.Civ.P. 12(b)(6).[1]

Third–Party Defendant Mountain Pacific contends that summary judgment is appropriate as there are no genuine issues of material fact regarding its duty to indemnify Super Sky Products because there is no written agreement waiving its immunity from third-party claims as is required under the Pennsylvania Workers' Compensation Act, 77 P.S. § 481(b). Super Sky alleges that its written communications and course of conduct with Mountain Pacific were sufficient to create a valid indemnification agreement.

■ The Pennsylvania Workers' Compensation Act serves as the sole and exclusive remedy, in place of any other liability, for workers who are injured in the course of their employment. 77 P.S. § 481. "The exclusivity provision of the Workers' Compensation Act essentially

1. Upon a motion to dismiss for failure to state a claim upon which relief can be granted under F.R.C.P. 12(b)(6), if "matters outside the pleading are presented to and not exclud-ed by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...." F.R.C.P. 12(b).

'bars tort actions flowing from any work-related injury.'" *Snare v. Ebensburg Power Co.,* 431 Pa.Super. 515, 519, 637 A.2d 296, 298 (Pa.Super.1993) (quoting *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 256, 469 A.2d 158, 160 (Pa.1983)). "An employer must assume liability under the Act regardless of fault in exchange for insulation from a potentially larger verdict in a common law action." *Snyder v. Pocono Medical Center,* 440 Pa.Super. 606, 610, 656 A.2d 534, 536 (Pa.Super.1995).

In order to further its goal of exclusivity, the Act shields employers from third-party negligence claims as well as claims from injured plaintiffs. Third-party negligence claims will be disregarded unless an employer has entered into an express agreement to indemnify the third party for those specific types of claims.

■■■■■ The pertinent portion of the Act states:

> [T]he employer ... shall not be liable to a third party for damages, contributions, or indemnity in any action at law, or otherwise, unless liability for such damages, contribution, or indemnity *shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.*

77 P.S. § 481(b) (emphasis added). It is clear from the language of the statute that in order to create a valid indemnification agreement, three important elements must be met: (1) there must be a written agreement; (2) the written agreement must expressly provide for indemnification for the specific type of claim brought; and (3) the agreement must have been entered into prior to the date of the occurrence of the injury. *See Thomeier v. Rhone–Poulenc, Inc.,* 928 F.Supp. 548, 552–553 (W.D.Pa. 1996) (finding agreement did not meet requirements of § 481(b) because it did not pre-date the occurrence of the injury and did not have the requisite specificity). General indemnity language within a contract is not enough to derogate from the statutory scheme of exclusivity. "An asserted indemnification provision must be carefully scrutinized and strictly construed." *Shumosky v. Lutheran Welfare Services of Northeastern PA, Inc.,* 784 A.2d 196, 203 (Pa.Super.2001) (holding that the indemnification agreement at issue was insufficient because it did not specifically include claims by the indemnitor's employees). Indemnification agreements falling under the Act must contain clear and unequivocal language to support their validity. These types of agreements are not favored by the law and must be construed against the party seeking indemnification. *See Snare,* 431 Pa.Super. at 521, 637 A.2d at 298.

■■■■ It is not necessary for the court to determine whether the disputed indemnification agreement in this case contains the requisite level of specificity because the agreement fails to meet another requirement of § 481(b); it was not entered into prior to the date of the injury. Therefore, its terms are inapplicable.

Mountain Pacific and Super Sky signed the agreement entitled "General Conditions for Purchase Orders," containing the disputed indemnification provision on May 21, 1999. (*See* Exhibit D, Mountain Pacific's Certification). Plaintiff, Fulgham was injured on April 24, 1999, approximately one month prior to the execution of that agreement. Coverage of the plaintiff's injury was not mentioned in the agreement, nor did the agreement contain a provision stating that it would be applied retroactively. (*See id.*). The agreement, however, did contain a provision stating that the "Purchase Order shall constitute the full and complete agreement between the parties." (*See id.*). In opposition to Mountain Pacific's motion for summary judgment, Super Sky contends its contractual claims are not barred by Pennsylvania law.

The exclusivity provision of the Pennsylvania Workers' Compensation Act is, by its terms, very specific. The Act requires an express written agreement entered into by the parties prior to the injury. 77 P.S. § 481. There is no such agreement in this case.

Under Pennsylvania law, even a contract that is signed the same day the injury occurs does not meet the statute's requirement that the agreement be entered into *"prior to the date of the occurrence which gave rise to the action."* 77 P.S. § 481(b) (emphasis added); *see Pendrak v. Keystone Shipping Co.*, 300 Pa.Super. 393, 396–397, 446 A.2d 912, 913–914 (Pa.Super.1982) (holding the fact that the contract was signed on the date of the injury, even though it was entered into prior to the injury, precludes its validity under the Act since it was not signed prior to the date of the injury); *Thomeier*, 928 F.Supp. at 552–553 (finding certificate of merger did not meet the requirements of § 481(b) because the merger occurred after the injury); *McMaster v. Amquip Corp.*, 2 Pa. D. & C. 4th 153, 155–156 (Pa.Com.Pl.1989) (precluding third party claim against employer pursuant to an indemnification agreement where the agreement was executed the same day as the plaintiff's injury). It can hardly be argued that the provisions of a contract signed nearly a month after the injury should be applied retroactively by the Court where there is no mention of retroactive application in the contract itself. "Under Pennsylvania law, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." " *Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.*, 44 F.3d 1194, 1199 (3d Cir.1995). The Court will not assume an application that is inconsistent with the language of the contract. *See Brady v. Borough of Dunmore*, 84 Pa.Cmnwlth. 331, 335, 479 A.2d 59, 61 (Pa.Cmnwlth.1984) (refusing to apply a collective bargaining agreement retroactively to cover workers injured prior to the agreements effective date, noting that if the parties had intended to include those injuries, they could have stated so in the agreement). Nor will the Court insert additional terms into the contract in order to make it applicable to the present case. Rather, the parties have written their own agreement and it is the duty of the Court to interpret and enforce that contract according to its terms. *See Brady*, 84 Pa. Cmwlth. at 335, 479 A.2d at 61. In this case, like in *Brady*, there was no language in the contract which made its application retroactive nor was there any mention of coverage for injuries that occurred prior to the execution of the contract. Therefore, the terms of the contract do not apply to Plaintiff's injury which took place approximately one month before the contract was executed.

Since there is no express agreement of indemnification entered into prior to the date of Plaintiff's injury as is required to circumvent the exclusivity provision under § 481(b) of the Pennsylvania Workers' Compensation Act, Mountain Pacific is insulated from liability to third-party plaintiffs. The Court grants Mountain Pacific's motion for summary judgment and dismisses Super Sky's claims against it.

## F. DEFENDANT TURNER CONSTRUCTION COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant Turner Construction Company moves for summary judgment under Fed.R.Civ.P. 56 on two separate grounds. Turner moves for summary judgment and dismissal of Plaintiff's claim, contending it is entitled to immunity as a statutory employer under Section 203 of the Pennsylvania Workers' Compensation

Act, regardless of whether it has a vertical relationship with Plaintiff's employer. Turner moves for summary judgment and dismissal of co-defendant's claims for indemnification, arguing there are no genuine issues of material fact such that it is entitled to indemnification as an additional insured. Both of Turner's arguments are without merit.

▮▮▮▮ Turner argues that Plaintiff's claim is barred because it qualifies for statutory employer immunity under the Pennsylvania Workers' Compensation Act, 77 P.S. § 1 et. seq. A "statutory employer is a master who is not a contractual or common-law one, but is made one by the Act." *McDonald,* 302 Pa. 287, 289, 153 A. 424, 425. As more fully discussed above, statutory employers, under the Act, enjoy both benefits and detriments. 77 P.S. § 52; 77 P.S. § 481. The statutory employer is secondarily liable for workers' compensation benefits in exchange for immunity from other types of liability, including negligence actions. Because statutory employers are only secondarily liable, it is more likely that a statutory employer will receive immunity than be required to pay benefits. Therefore, there is concern about extending the protection of statutory employer immunity under the Act.

" '[V]ery great care ... must be exercised before allowing an employer to avoid his liability at common law by asserting he is a statutory employer. Section 203 of the Workers' Compensation Act, which was designated to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge ....' " *Stipanovich v. Westinghouse Electric Corp.,* 210 Pa.Super. 98, 106, 231 A.2d 894, 898 (Pa.Super.1967). This warning rings especially true in the present case in which employers such as Turner, that have no vertical relationship with the injured employee's immediate employer, are more likely to reap the benefits of immunity under the Act than to be held liable for workers' compensation payments.

The Pennsylvania courts have limited the application of the Act by requiring vertical privity between the party claiming it is a statutory employer and the injured worker's immediate employer. *See Cox v. Turner Construction Co.,* 373 Pa.Super. 214, 220–221, 540 A.2d 944, 946 (Pa.Super.1988) (denying statutory employer immunity because there was no vertical relationship between the parties); *Grant v. Riverside Corp.,* 364 Pa.Super. 593, 528 A.2d 962, (Pa.Super.1987) (refusing to find statutory employer immunity because the vertical relationship was the key element missing).

In this case, Turner contracted directly with the City of Philadelphia to serve as construction manager on the airport renovation project. Turner, however, did not contract with the general contractor or any of the subcontractors hired for the project. The general contractor, Keating contracted directly with the City of Philadelphia, agreeing to complete all of the labor for the renovations. Keating subcontracted the manufacture and installation of the skylights to Super Sky, which, in turn, subcontracted the installation to Mountain Pacific, the Plaintiff's employer. Turner had no part in this vertical chain of privity. This case is directly analogous to *Cox* and *Grant,* in which the Pennsylvania Superior Court held that contractors outside of the vertical chain of privity will not be afforded statutory employer immunity under the Act. Turner admits that it does not have a vertical relationship with the Plaintiff's employer and concedes that the holding in *Cox* requires vertical privity. (*See* Turner's Memorandum of Law Supporting Motion for Summary Judgment at 8). Turner argues, however, that *O'Boyle v. J.C.A. Corp.,* 372 Pa.Super. 1, 538 A.2d 915

(Pa.Super.1988), saves its claims for statutory immunity because the case holds that construction managers as well as general contractors may be statutory employers. Turner's argument is frivolous, at best. In *O'Boyle*, a party who contracted with the owner was named a construction manager rather than a general contractor in the agreement. The plaintiff argued that because the contractor was deemed a construction manager rather than a general contractor, it could not qualify as a statutory employer. The court held that it would not be ruled by nomenclature, rather, it would examine the actual agreement between the parties. It stated that because the construction manager was responsible for the completion of the project and subcontracted portions of the labor to the subcontractor whose employee was injured, it qualified as a statutory employer, regardless of its title. *O'Boyle* provides absolutely no support for Defendant Turner's position. It does not contradict or distinguish *Cox* in any way. It does not even address the issue of vertical privity. Furthermore, the construction manager in *O'Boyle* did have a vertical relationship with the injured worker's employer. The only analogous fact between the two cases is that Turner was also named a construction manager. The Court will not misconstrue a discussion of nomenclature to have any effect on the necessity of a vertical relationship between a statutory employer and the Plaintiff's immediate employer.

Turner had no vertical relationship with Plaintiff's employer Mountain Pacific and thus does not qualify as a statutory employer. Turner, therefore, was not in any way obligated to provide compensation to Mountain Pacific's employees under the Pennsylvania Workers' Compensation Act, and can not be protected by the Act by attempting to "claim the right to stand in [Mountain Pacific's] shoes," after those benefits have been paid. *Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962, 967 (1987). Turner is not entitled to statutory employer immunity. The Court denies Turner's Motion for Summary Judgment against Plaintiff.

Turner also moved for summary judgment on its claim for indemnification against Keating, Super Sky and Mountain Pacific. Turner relies solely on *Borough of Wilkinsburg v. Trumbull–Denton Joint Venture*, 568 A.2d 1325, 390 Pa.Super. 580 (Pa.Super.1990), to support its proposition that a general contractor that agrees to purchase and maintain liability insurance, naming the subcontractor as an additional insured, is required to defend and indemnify that subcontractor or is liable for the subcontractor's costs if it fails to do so. *Wilkinsburg* is inapposite to the case at hand. In this case, Turner has offered no evidence of a obligation to indemnify and name Turner as an additional insured under the general contractor and subcontractors' insurance policies.

There are two ways in which Turner would have a right of indemnification under the law: (1) Turner could have contracted directly with the parties for a right of indemnification; (2) Turner could recover as a third-party beneficiary under a contract between the City and the contractors which conferred indemnification rights on Turner. It is undisputed that Turner has not contracted directly with Keating, Super Sky or Mountain Pacific. As already discussed extensively, the only party with which Turner contracted was the City of Philadelphia. The City of Philadelphia separately contracted with Keating who contracted with Super Sky who, in turn, contracted with Mountain Pacific. There is no contract between Turner and the parties from which it claims indemnification rights.

 It is difficult for the Court to decipher the legal theory upon which Turner is claiming its right to indemnification.

Turner points to various contracts between Keating, Super Sky and Mountain Pacific, quoting the standard indemnification language which in essence requires each party to agree to indemnify the party above it. However, none of these contracts mention Turner, nor is Turner a party to any of these agreements. Again, Turner is outside of the vertical chain of privity. Turner next alleges that the contract between the City of Philadelphia in which Keating agreed to indemnify the City and its agents or employees, somehow covers Turner. Turner is not mentioned in the contract, nor does the company offer any argument or evidence that it qualifies as an agent or employee of the City under the terms of the contract.[2] If Turner is suggesting it should recover as a third-party beneficiary of the contract, its attempt again falls short. "It is true that a third party beneficiary need not be expressly named in the contract so long as the circumstances indicate that the contracting parties intend to confer a benefit upon a third party ...." *Hicks v. Metropolitan Edison Co.*, 665 A.2d 529, 535 (Pa.Cmwlth. 1995). The contract between Keating and the City, however, expressly precludes any benefit to third parties. Although the contract requires Keating to indemnify the City its servants, agents or employees, it limits this indemnification by stating:

> It is not the intention of this agreement or anything herein provided to confer a third party beneficiary right of action upon any person whatsoever and nothing hereinbefore or hereinafter set forth shall be construed so as to confer upon any person other than the City of Philadelphia a right of action either under this contract or in any manner whatsoever ....

(*See* Exhibit D, Turner's Statement of Undisputed Facts). Turner can not be a third party beneficiary under the terms of the contract between Keating and the City.

Turner also points to the Supplemental Provisions to Standard Contract Requirements. (*See* Exhibit L, Turner's Statement of Undisputed Facts). These supplemental provisions are presented in a vacuum without attachment to any contract and without names or signatures of the parties. It is unclear to the Court which companies were a party to these provisions and whether these provisions confer benefits upon Turner vis-a-vis the general contractor and subcontractors on the project. However, even if these provisions did confer a benefit upon Turner, it is a limited one. Section 3(H) of the provisions covers the naming of additional insureds on insurance policies. It lists several covered entities including the "City of Philadelphia, and their officers, employees and agents." It does not name Turner. Assuming arguendo that Turner qualified as an officer, employee or agent of the City and assuming that either Turner and Keating were both parties to the contract or that the provisions were intended to benefit Turner as a third party, they are inapplicable to the present case. By its terms, the supplemental provisions only require the additional insureds to be covered for automobile insurance under 3(A), aircraft liability under 3(D) and commercial general liability for operations away from the job site under 3(B). *See id.* It is undisputed that Plaintiff was injured on-site and his injury cannot be covered by any of the supplemental provisions.

**2.** Under Pennsylvania law there are three basic elements of agency: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. *Basile v. H & R Block, Inc.*, 563 Pa. 359, 761 A.2d 1115 (Pa.2000); Restatement (Second) of Agency § 1 (1958).

Likewise, the certificates of insurance provided as evidence by Turner are not evidence of anything. The actual insurance policies were not provided. The certificates of insurance do not name Turner. Certain certificates name "construction manager" or "the City, its employees and agents" as additional insureds. There has been no evidence provided that Turner is included in those descriptions. Turner also has provided no evidence that those certificates confer general as opposed to limited liability insurance upon those parties. Further, if Turner can prove that the insurance policies provide coverage, Turner's right is against the insurance companies. Turner has no right to recover against the contractors. Defendant Turner Construction Company's motion for summary judgment against Keating, Super Sky and Mountain Pacific is denied.

### G. DEFENDANT SUPER SKY PRODUCTS, INC. MOTION FOR SUMMARY JUDGMENT

■ Defendant Super Sky Products, Inc. moves for summary judgment under Fed.R.Civ.P. 56, alleging that there are no genuine issues of material fact such that Super Sky had no duty to Plaintiff and is not negligent as a matter of law. Super Sky was hired by the general contractor, Keating to manufacture and install skylights in the train station during the airport renovations. Super Sky manufactured the skylights but subcontracted the actual installation of the skylights to Mountain Pacific. Super Sky alleges that it had no control over the work being performed onsite and thereby had no duty to Mountain Pacific's employees. It contends that because it subcontracted the installation of the skylights to Mountain Pacific, had no involvement in the work being performed and had no employees at the work site, there are no genuine issues of material fact as to whether it retained control over the work site. (*See* Exhibit F to Super Sky Brief in Support of Motion for Summary Judgment, Answers of Defendant Super Sky Products, Inc. to Plaintiff's First Set of Interrogatories). Super Sky contends that since it exercised no control over the work, it had no duty to Plaintiff and cannot be found liable as a matter of law. Mountain Pacific points to communications between Super Sky and its employees to support its position that Super Sky retained control over the workplace and had a corresponding duty to keep the workplace safe.

■ In order to make out a prima facie case in a negligence action under Pennsylvania law, a plaintiff must show (1) that he was owed a duty of care; (2) that the duty was breached; (3) that he was injured; and (4) that his injuries were proximately caused by the breach of that duty. *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 504 (Pa.Super.1999); *Martin v. Evans, FORC Co.*, 551 Pa. 496, 502, 711 A.2d 458, 461 (Pa.1998). Absent a duty owed by the defendant to the injured party, there is no right of recovery in negligence. *See Herczeg v. Hampton Township Municipal Authority*, 766 A.2d 866, 871 (Pa.Super.2001) (plaintiff bears the burden of demonstrating there was a duty recognized by law that defendant breached). It is well-settled under Pennsylvania law, that one who employs or engages an independent contractor is not responsible for the acts or omissions of the contractor or its employees. *See Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 150, 189 A.2d 271, 277 (Pa.1963) (finding contractors were not liable under a negligence theory to injured employee of subcontractor because contractors did not retain control over the work site and therefore owed no duty to subcontractor's employees). The Third Circuit, however, applying Pennsylvania law, has recognized that an employer of an independent contractor

may be liable in negligence if it retains control over the contractor's work.

[A] reservation of control or the exercise of control by the employer over the details of the independent contractor's performance may make the employer liable for negligence in the execution of the work ... It should be added that this liability creating right of control is something more than the general right of inspection and supervision that an employer normally enjoys and exercises to make sure that he receives from the contractor the benefit or total performance that was bargained for.

*Peter v. Public Constructors, Inc.*, 368 F.2d 111, 113 (3d Cir.1966) (citations omitted). In this case, the parties are in dispute over the level of control maintained by Super Sky. While Super Sky claims that it retained no control, there is evidence of Super Sky communications regarding the work being performed. (*See* Exhibits B–F to Plaintiff's Brief in Opposition to Defendant Super Sky Products Inc.'s Motion for Summary Judgment). This evidence creates issues of fact as to level of control exercised by Super Sky.

In *Leonard v. Commonwealth of Pennsylvania, Dept. of Transp.*, 565 Pa. 101, 771 A.2d 1238 (Pa.2001), the Pennsylvania Supreme Court considered the necessary amount of control a subcontractor must retain over a sub-subcontractors' work in order to be held responsible for a duty of safety at the work site. In *Leonard*, PennDOT entered into a contract with Kiewit Eastern Company and Perini Corporation (collectively "Kiewit/Perini") as general contractor for improvements being made to Interstate 476 in Pennsylvania. Kiewit/Perini subcontracted with High Steel Structures, Inc. ("High Steel") to fabricate and erect steel for the bridges on the highway. High Steel subcontracted the erection of the steel to Cornell and Company ("Cornell"). A Cornell employee was injured during his work on the bridge and brought a negligence action against Kiewit/Perini and High Steel. The court held that a general contractor or subcontractor who subcontracted work to a subordinate subcontractor and who was neither present at the work site nor exercised control over the work site was not liable for injuries arising from activities at the work site.

Pennsylvania has adopted the Restatement (Second) of Torts § 384 which places liability on contractors for physical harm caused while such contractors are conducting work on another's land.[3] Comment d under § 384 gives general contractors the ability to sublet parts of their work to subcontractors while limiting their liability. The comment states that in the case of subcontracted work, the rule applies to "subject the particular contractor or subcontractor to liability for only such harm as is done by the particular work entrusted to him." *See Leonard*, 565 Pa. at 106, 771 A.2d at 1240; *see also Duffy v. Peterson*, 386 Pa. 533, 539, 126 A.2d 413, 416 (Pa.1956). In *Leonard*, the court stated that even if the contractor and subcontractor had contractual and regulatory duties under Occupational Safety and Health Administration ("OSHA") regulations to provide safe work sites, those duties could be delegated through contract to the sub-subcontractor. *Leonard*, 565 Pa. at 107, 771 A.2d at 1241. The court held that since the subcontract with Cornell fully delegated the task of erecting the steel, the other

---

**3.** The Restatement (Second) of Torts § 394 provides:

One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of land, for physical harm caused to others upon and outside the land but the dangerous character of the structure or other condition while the work is in his charge.

contractors no longer had control over the work being done and could not be liable for injuries arising from that work. *Id.* The court stated:

> The mere fact that contracts initially placed responsibility on Kiewit/Perini and High Steel does not make that responsibility nondelegable; nor does it give them a presumed presence at the site or control over the manner in which the subcontractor performed its work. To hold otherwise would mean that one could subcontract for the performance of work but not successfully delegate the safety responsibility that normally accompanies that work. Logically, safety responsibility best rests on the subcontractor doing the work, for that party is most familiar with the work and its particular hazards.

*Leonard,* 565 Pa. at 108, 771 A.2d at 1242.

This present case differs from *Leonard* because, in this case, the contract delegating duties from Super Sky to Mountain Pacific was not signed until after the Plaintiff's injury. Whereas in the discussion above, the contract between Mountain Pacific and Super Sky was not valid under the terms of the Pennsylvania Workers Compensation Act, here the Court must analyze the contract under common law.

 Under common law, a contract may be formed prior to the final signing of the contract, based upon the intent of the parties, if there has been a "meeting of the minds" in which the parties intend to enter into a binding agreement. "It is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration or a mutual meeting of the minds." *Jenkins v. County of Schuylkill,* 441 Pa.Super. 642, 648, 658 A.2d 380, 383 (Pa.Super.1995). The Court may look to the parties' conduct to determine whether it evidences an intent to be bound. *See Schreiber v. Olan Mills,* 426 Pa.Super. 537, 541, 627 A.2d 806, 808

(Pa.Super.1993). In the present case, there was not an executed contract between the parties until after the Plaintiff's injury. Mountain Pacific and Super Sky, however, did exchange partially executed drafts of the contracts during their negotiations. The insurance and indemnification provisions in these drafts were unchanged. These exchanges could be evidence of the parties intent to be bound through a meeting of the minds. The exchanges could also be evidence of counter-offers. " 'A reply [to an offer] which purports to accept the offer, but instead changes the terms of the offer, is not an acceptance, but, rather, is a counter-offer, which has the effect of terminating the offer.' " *Espenshade v. Espenshade,* 729 A.2d 1239, 1247 (Pa.Super.1999). Viewing the evidence in the light most favorable to Mountain Pacific, there are genuine issues of fact as to whether there was a "meeting of the minds" and a contract was formed prior to execution by the parties. Super Sky has not provided evidence of the parties intent to enter into a binding agreement or the intent to delegate the safety duties prior to the signing of the contract. There are also issues of fact as to whether Super Sky retained control over the work site. Therefore, it is inappropriate upon summary judgment for the Court to determine whether Super Sky's safety responsibilities had properly been delegated to Mountain Pacific. Super Sky's motion for summary judgment against Plaintiff is denied.

Super Sky also moves for summary judgment against all of its co-defendants cross-claims, including Turner's cross-claim for indemnification. There is no express indemnification agreement between Super Sky and Turner as is required under Pennsylvania law. 77 P.S. § 481. For the reasons discussed above in Section F, Super Sky's motion for summary judgment against Turner Construction Company is

granted. The Court dismisses Turner's claim against Super Sky.

Super Sky provides no evidentiary basis for it motion for summary judgment against the remaining cross-claims by co-defendants. Therefore, there are genuine issues of fact as to whether there were express indemnification agreements formed between the parties. *See* 77 P.S. § 481. Super Sky's motion for summary judgment against the remaining co-defendants is denied.

### III. *CONCLUSION*

For the reasons stated above, Defendant Daniel J. Keating Company's Motion for Summary Judgment against Plaintiff is granted and Plaintiff's claims are dismissed. Defendant Keating's Motion for Summary Judgment against Turner Construction Company is granted. Defendant Daniel J. Keating Company's Motion for Summary Judgment against the remaining co-defendants is denied. Third–Party Defendant Mountain Pacific L.L.C.'s Motion to Dismiss Super Sky Products Inc.'s Third–Party Complaint against it pursuant to Fed.R.Civ.P. 12(b)(6) was treated as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Mountain Pacific's Motion for Summary Judgment against Super Sky is granted and Super Sky's claims against it are dismissed. Defendant Turner Construction Company's Motion for Summary Judgment against Plaintiff is denied. Defendant Turner Construction Company's Motion for Summary Judgment against Keating, Super Sky and Mountain Pacific is denied. Super Sky Products Inc.'s motion for summary judgment against Plaintiff is denied. Super Sky Product Inc.'s motion for summary judgment against Turner Construction Company is granted. Super Sky Products Inc.'s motion for summary judgment against the remaining co-defendants is denied. The Court will enter an appropriate order.

### ORDER

**THIS MATTER** having come before the Court on the motion of Defendants Turner Construction Company, Daniel J. Keating Company and Super Sky Products, Inc. for summary judgment under Federal Rule of Civil Procedure 56 and motion by Third–Party Defendant Mountain Pacific, LLC to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment under Federal Rule of Civil Procedure 56.

The Court having reviewed the record and the submissions of the parties;

For the reasons set forth in the Court's opinion of this date;

**IT IS** this 29 day of September, 2003 **HEREBY**

**ORDERED** that Defendant Daniel J. Keating Company's Motion for Summary Judgment against Plaintiff is **GRANTED;** and

**IT IS FURTHER ORDERED** that Defendant Daniel J. Keating Company's Motion for Summary Judgment against Turner Construction Company is **GRANTED;** and

**IT IS FURTHER ORDERED** that Defendant Daniel J. Keating Company's Motion for Summary Judgment against remaining co-defendants is **DENIED;** and

**IT IS FURTHER ORDERED** that Third–Party Defendant Mountain Pacific L.L.C.'s Motion for Summary Judgment against Super Sky Products, Inc is **GRANTED;** and

**IT IS FURTHER ORDERED** that Defendant Turner Construction Company's

Motion for Summary Judgment against Plaintiff is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Turner Construction Company's Motion for Summary Judgment against Defendants Daniel Keating Co., Super Sky Products, Inc. and Mountain Pacific, L.L.C. is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Super Sky Product's Inc.'s motion for summary judgment against Plaintiff is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Super Sky Product's Inc.'s motion for summary judgment against Turner Construction Company is **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant Super Sky Product's Inc.'s motion for summary judgment against remaining co-defendants is **DENIED.**[4]

No costs.

---

4. The issues remaining to be tried include Plaintiff's claims against Super Sky Products Inc., Turner Construction Company, John Does 1–10; Daniel J. Keating Company's cross-claims against Super Sky Products, Inc., John Does 1–10; Super Sky Products Inc.'s cross-claim against Keating Construction Company; Super Sky Product Inc.'s third-party complaint against J.R. Misken Inc., St. Paul Insurance Company, United States Fidelity Company; J.R. Misken Inc.'s cross-claim against St. Paul Insurance Company, United States Fidelity Company; United States Fidelity Company's cross-claim against J.R. Misken Inc., Travelers Insurance Company, PMA Group Insurance Company; Turner Construction Company's third party complaint against St. Paul Insurance Company, Travelers Insurance Company, PMA Group Insurance Company., J.R. Misken Inc.